**A F F I D A V I T**

I, Kevin Farnsworth, being duly sworn, depose and say:

(1)  I am a Special Agent (SA) of the United States Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  I have served in the capacity of an ATF agent for 21 years, since 1987.  I have received specialized training in the investigation of violations of the Federal firearms, explosives and arson laws, as well as other matters that fall within the purview of ATF.  Since 2002, I have worked as a Task Force Officer (TFO), assigned to the Joint Terrorism Task Force (JTTF) in Springfield, Missouri, responsible for the investigation of both domestic and international terrorism matters.  I have been personally involved as the case agent or as an assisting agent in hundreds of investigations, to include those involving firearms, explosives, arson, alcohol, tobacco, drugs, fugitives and terrorism matters.

 (2) Over the course of the past several years, ATF SA Tristan Moreland has engaged in an investigation into a February 26, 2004, bombing incident that injured the Director of Diversity & Dialogue for the City of Scottsdale, Arizona.  The injured director, identified as Don Logan, is a black male.  The subsequent investigation has focused on several persons involved in the white supremacist movements throughout the United States.  Through this investigation, SA Moreland identified brothers Dennis and Daniel MAHON as suspects in the Arizona bombing.

(3)  In January 2005, SA Moreland initiated an undercover investigation of the MAHON brothers and others.  To date, several ATF undercover agents (UCAs) as well as an ATF cooperating individual (CI) have been used in an undercover capacity to conduct this investigation.  The undercover investigation continues through the present time.

(4)  Investigators reviewing telephone records of one of the Arizona bombing suspects, Dennis MAHON, found that Mahon's phone made several calls on the morning the package bomb was left at the library.  The first call made in that string of morning calls was to a cellular telephone number registered to Robert JOOS at 7:11am CST.

(5)  In February 2005, the ATF CI and an ATF UCA met
bombing suspects Dennis MAHON and Daniel MAHON in Catoosa,
Oklahoma.  During this time period, the MAHON brothers told
the CI and UCA about a "retreat" location in Missouri that
he and other members of the "movement" used as a survival
training location.  MAHON told the CI that this location is
a remote 200-plus acre property occupied by an individual
named Robert JOOS.  MAHON further described JOOS as a long-
time, white supremacist associate and an expert on weapons,
explosives, bomb making and general survival skills.  MAHON
provided the CI with a map to JOOS' property and a phone
number to contact him.  Over the course of calendar year
2005, through the present, the CI had several telephonic
contacts with JOOS and visited him on three (3) occasions.

(6)  The ATF's investigation of Robert JOOS utilized covert
tactics, to include undercover meetings with JOOS while on
JOOS' Missouri property.  The meetings took place during
January 2008, January 2009 and February 2009.  During the
2008 meeting, JOOS was contacted by the CI alone; however
during the 2009 contacts, JOOS was contacted by the CI and
two (2) ATF UCAs.  The predominate amount of evidence
gathered in support of this application for a search
warrant was gathered during the more recent 2009 meetings.

(7)  In January 2008, the CI made a brief visit to the JOOS
property.  During that visit, the CI was given a brief tour
of the property by JOOS and the two discussed various
topics to include weapons, training, and associates.  The
CI was also able to observe one firearm (a long gun)
located behind the front door of a building that JOOS told
the CI was the "*office*".  This building is discussed
further in this affidavit, but will hereafter be referred
to as the "office/residence."  During the 2008 visit, the
CI also observed at least two rounds of red-colored shotgun
ammunition in the office/residence, as well as what
appeared to be several long guns (rifles and/or shotguns)
covered by a blanket in the northeast corner of the
office/residence.  The CI is a long time gun owner and
shooter and is very familiar with firearms, to include long
guns, pistols, revolvers, and ammunition.  During that same
visit, JOOS taught the CI how to make napalm and agreed to
train other people in his/her group.  Sometime after
leaving Missouri, the CI made telephone contact with JOOS
and asked him to clarify which type of soap was used in his

2

napalm recipe, which he did.  That telephone call was
recorded.

(8)  Over calendar year 2008, the CI maintained regular
contact with JOOS, indicating to JOOS that he/she was
involved in illegal acts on behalf of the movement and
associating with other activists in Arizona.  During this
period, JOOS routinely indicated his knowledge to the CI of
various topics to include the making and use of explosives,
the purchase, possession, and use of firearms and other
general topics.  JOOS indicated to the CI about his ability
to avoid capture from law enforcement in the late 1980's
and early 1990's by using the caves on his property for
concealment and shelter.  He often discussed stocking the
caves with weapons, food, water and other supplies in order
for JOOS, or others, to be able to avoid capture or attack
by the government or other adversaries.

(9)  In subsequent telephone conversations during calendar
year 2008, JOOS routinely invited the CI to visit him again
at his property in Missouri and agreed to help the CI and
his/her associates with training and other advice.

(10) During the week of January 5, 2009, the CI, along with
ATF UCAs Tristan Moreland and April Howell, visited JOOS at
the JOOS property in McDonald County Missouri.  Prior to
the visit, the CI told JOOS that UCA Moreland was a
movement associate and the CI would be traveling across
county with UCA Moreland and his girlfriend, UCA Howell.
JOOS encouraged and expected the trio to visit his property
in Missouri.

(11) After entering the office/residence, UCAs Moreland and
Howell, as well as the CI, saw what appeared to be two or
more long guns covered by a blanket in the northeast corner
of the front room and what was later confirmed to be a BB
gun in the kitchen area of the office/residence.  UCA
Moreland visually verified that the suspected firearms
under the blanket were in fact firearms after covertly
pulling the blanket aside for a better view.

(12) In a conversation during this visit, UCA Moreland told
JOOS,"*All you need is one gun and a lot of ammunition.*"
This was in reference to arming oneself when a conflict
begins.  JOOS responded by correcting UCA Moreland and
stated that it is important to have firearms in multiple
locations and gave an example of this by stating he had 18

3

different caves to secrete firearms.  JOOS said it was
important to have firearms in different locations because
in a conflict, one needed to have access at several
locations.  JOOS told the UCAs and CI he is actively
stocking and maintaining these caves.  JOOS' statements
clearly led UCA Moreland, UCA Howell and the CI to believe
JOOS has been, and continues to, conceal firearms in the
caves on his property.

(13) When questioned by the UCAs and the CI as to whether
or not he (JOOS) had any .380 caliber ammunition, JOOS told
UCA Moreland he did not have any .380 caliber ammunition,
but did have .45 caliber and 9mm caliber ammunition.  UCA
Moreland saw several ammunition cans throughout the
office/residence.  UCA Moreland also saw a box on a shelf
at JOOS' property familiar to UCA Moreland as one that a
commercially produced firearm is packaged in.  The box was
labeled "Classic Firearms."

(14) During the next two days of the visit, JOOS told the
UCAs and the CI he often searches the local paper for
firearms to purchase.  On one occasion, JOOS grabbed one of
the papers and discussed the gun adds with UCA Moreland.
JOOS told the UCAs and CI that they (indicating he and his
Church associates) all have .30-06 caliber bolt-action
rifles loaded with armor piercing ammunition.  JOOS stated
these .30-06 caliber rifles and ammunition are preferred by
them due to their effectiveness if used against law
enforcement and because of group familiarity with the
firearm.

(15) JOOS specifically identified himself and "*Jeff*" as
currently possessing the .30-06 caliber firearms.
Throughout the visit, JOOS talked to the UCAs and the CI
about Jeff as a sort of Treasurer of the Church and pointed
out Jeff's residence, which is located on JOOS' land.  The
CI briefly saw Jeff come out of a mobile home near the
front gate of the property.  JOOS told the UCAs and the CI
that Jeff's wife is a heavy marijuana user.  Records
indicate Jeff's surname is Conway and he has a prior arrest
record for marijuana possession.

(16) During the January 8, 2009, meeting at JOOS'
office/residence, the CI, with JOOS' knowledge, crawled up
a ladder in the front room to view out a window.  When
climbing down the ladder, the CI brushed up against several
firearms covered by a sheet at the base of the ladder.  The

4

CI pointed out the firearms to UCA Moreland. UCA Moreland observed what appeared to be approximately 4 or 5 long guns in that location, which was different from the other long guns under the blanket noted before.

(17) When touring the JOOS property on January 8, 2009, JOOS showed the UCAs and CI several caves and other terrain. A couple of the caves had small items and storage containers within, but mostly the caves JOOS showed were empty. When asked about storage containers in a cave near the front gate of the property, JOOS told the UCAs he had ammunition stored there.

(18) On several occasions during the January 2009 visit, JOOS told UCA Moreland and others that he is a twice-convicted felon. He said he was convicted once for carrying a concealed weapon in Missouri and the other for driving without a license. JOOS admitted he was currently on parole and would possibly be subject to "*three strikes*" prosecution in the State of Missouri if convicted of any other felony. JOOS admitted he cannot possess firearms legally, but believes he will be able to legally possess the firearms when his parole ends on January 22, 2009.

(19) On February 9, 2009, UCAs Moreland and Howell, along with the CI, returned to the JOOS property in rural McDonald County Missouri. JOOS was expecting the visit and admitted them to his home as he did previously during the January 2009 visit. JOOS had several gun advertisements at his home and later showed them to UCA Moreland. UCA Moreland and JOOS discussed firearms and how UCA Moreland buys and sells firearms for a monetary gain. JOOS told UCA Moreland he has a friend who has a connection with a firearms dealer and they are working to purchase a case of twelve (12) Mosin-Nagannts (Russian sniper rifles). JOOS said that the final price would be about $75 to $80 per rifle.

(20) During the February 2009 visit, UCAs Moreland and Howell observed a 12 gauge shotgun propped up behind the JOOS' living room door. UCA Moreland asked JOOS if the shotgun was a Mossberg and JOOS replied that it was. Based on JOOS' statement made that day, combined with later examination of other firearms in ATF inventory, UCA Moreland concluded the shotgun in JOOS possession was manufactured by Mossberg, a firearm maker located outside the state of Missouri.

(21) Robert Neil JOOS, a white male, born on December 25, 1952 in St. Louis, Missouri, Social Security Account Number 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, is prohibited from possessing firearms, ammunition and explosives under Title 18 of the Federal Criminal Code, due to prohibiting felony convictions entered in the Circuit Court of Missouri for McDonald County.

(22) On March 27, 1997, JOOS was found guilty after a jury trial of unlawful use of a weapon, a class D felony, which was punishable by up to five years imprisonment, under the laws of the State of Missouri, in the Circuit Court for McDonald County, Missouri.

(23) On October 13, 2004, JOOS was sentenced to two years' imprisonment in the Missouri Department of Corrections, after being previously found guilty by a jury of operating a motor vehicle without a valid license, a class D felony, which was punishable by up to four years imprisonment, in the Circuit Court of McDonald County, Missouri. On October 14, 2005, JOOS was admitted to the Missouri Department of Corrections (DOC), Western Reception and Diagnostic Correctional Center (WRDCC) under DOC#1134032. JOOS was released from parole supervision on January 22, 2009.

(24) Your affiant has participated in or has knowledge of the execution of numerous search warrants for firearms violations. In his experience, if a person has a firearm, they are likely to have a firearm for years. Firearms are a commodity which are retained and held for years and that length of time that probable cause remains fresh is an extended period: United States v. Rahn, 511 F.2d 290 (10th Cir.), cert. denied, 96 S.Ct. 41(1975); United States v. Batchelder, 824 F.2d 563, 547 (7th Cir. 1983); United States v. Ellison, 793 F.2d 942, 947 (8th Cir.), cert. denied, 107 S.Ct.415 (1986); United States v. Maxim, 55 F.3d 394, 397-398 (8th Cir.), cert. denied, 116 S.Ct. 265 (1995); United States v. Collins, 61 F.3d 1379 (9th Cir.), cert. denied, 116 S.Ct. 543 (1995).

(25) Although there has been a small number of federally licensed firearms manufactures (FFL) in the state of Missouri, none of those Missouri FFLs are major suppliers in the firearms industry. Nearly all commercially available firearms have been manufactured in states other

6

Case 3:09-cr-05022-MDH   Document 1-2   Filed 06/24/09   Page 6 of 7

than Missouri, or in foreign countries.  Therefore, nearly
all firearms possessed within the state of Missouri would
have had to travel in interstate and/or foreign commerce to
arrive in Missouri.  In particular, it is known that the
Mossberg shotgun observed in JOOS' possession referenced in
paragraph 20, was manufactured outside the State of
Missouri.


___/s/ Kevin Farnsworth_____
Kevin Farnsworth, Special Agent, ATF

SUBSCRIBED AND SWORN
BEFORE ME THIS 24th DAY
OF JUNE, 2009.


___/s/ James C. England___
James C. England
Chief United States Magistrate Judge
Western Judicial District of Missouri